GELDERS et al. v. HAYGOOD et al.

(Circuit Court, S. D. Georgia, S. W. D. May 26, 1910.)

1. ATTORNEY AND CLIENT (§ 44*)—GROUNDS FOR DISBARMENT—MISCONDUCT AS TO CLIENT.

It is not ground for disbarment of an attorney that he gave an opinion that a deed was valid and afterward brought suit against the grantee to recover the land based on defects in the title not involving such deed.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 44.*]

2. ATTORNEY AND CLIENT (§ 45*)—GROUNDS FOR DISBARMENT—MISCONDUCT AS AGENT.

It is not ground for disbarment of an attorney that he purchased land placed in his hands for sale as agent where he paid the price at which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his principal had agreed to sell, and no complaint was made by the principal.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 63; Dec. Dig. § 45.*]

3. ATTORNEY AND CLIENT (§ 45*)—GROUNDS FOR DISBARMENT—CONTEMPT OF COURT.

It is misconduct affording ground for disbarment by a federal court for attorneys to organize in another state a sham corporation, having neither capital nor business other than as a medium for bringing suits in the federal courts which could not be brought there by the real parties in interest, and to use such corporation after its illegal character has been adjudged by the federal court in bringing suits in a state court.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 63; Dec. Dig. § 45.*]

Petition by Isidor Gelders and Mrs. Emeline Hall for disbarment of J. W. Haygood and Eldridge Cutts, attorneys. Petition granted conditionally.

Akerman & Akerman, for petitioners.
Talley & Heyward, for respondents.

SPEER, District Judge (orally). There is no graver duty resting upon the court than to protect the professional integrity of the bar. This proceeding is brought with that purpose. It is alleged that the defendants, both members of the bar, and officers of the United States court, are guilty of various acts of misconduct of such character as renders them unfit to longer continue in the practice of a profession to whose care and custody the gravest rights of the public and of individuals are constantly intrusted. The case is quasi criminal in its character, and, as in all other cases of that general character, the burden of proof is upon the prosecution; that is to say, the evidence must so strongly preponderate in support of the accusations brought against the accused that it must produce upon the mind of the trior (here the trial judge) a conviction so clear and so satisfactory of guilt as to leave no fair and reasonable doubt to the contrary. With regard to many, indeed, I may say most of the accusations of personal misconduct on the part of these members of the bar, I do not think the evidence is sufficiently satisfactory to sustain that burden. That is true with regard to the title of Hall, about which it is said that the defendant Mr. Cutts gave an opinion that it was valid, and afterwards brought suit to recover the land conveyed from the person in whose favor the opinion was given. From the evidence it does not appear that he passed upon the title. It appears that he merely passed on the sufficiency of a single deed, to which was attached a draft. That deed he pronounced to be sufficient. He denies that he was paid for that service, but, even if he were paid, he held merely that that one deed was a sufficient deed from the maker to Hall, and, if it afterwards appeared to him in another interest that the title back of that deed was defective and insufficient, I can perceive no insuperable objection to his representing the interest adverse to that of Hall. In other words, if he passed merely on the execution of a single deed, that would not pre-

vent him in a proper case, with proper parties, from assailing the title of which that deed was only one link in the chain.

So, with regard to the Ham and Conner averment of improper conduct, it does appear that Haygood & Cutts were employed, along with Cannon, to sell a certain tract of land, and they turned out to be the purchasers, but they purchased at the price at which the owners of the land had agreed to sell. The only persons who could be heard to complain with regard to that transaction which involved the principle of agency as well as the principle of the duty of an attorney do not appear; that is, Mrs. Ham and Mrs. Conner. If they are satisfied with it, it does not, I think, lie in the mouth of the prosecution to object on that ground.

So with regard to all of these instances which have been so much discussed, and about which we have heard the evidence, the court is not satisfied as to any misconduct on the part of these defendants.

There is, however, a graver view of the situation to which I must direct my conclusion; and that is, their conduct with regard to the formation of this sham South Dakota corporation, the only advantage of which, one of them testified, was to enable them to bring suits in the United States court where the court would not otherwise have jurisdiction. That corporation was obviously fictitious. It was so held in this court by a verdict of a jury under the charge of the court when the issue was made. A conference was directed by the court, because it was perceived how gravely it might affect the character of these gentlemen. This conference was directed in all kindness and consideration for them. It was suggested that they dismiss the cases. But they took the advice of eminent counsel, Mr. King, of King & Spalding, of Atlanta, and they concluded to take the case to the Supreme Court of the United States in order that the opinion of this court, which they deemed erroneous, might be reviewed, and, if found to be erroneous, reversed. The Supreme Court heard the arguments of their counsel, and rendered its decision. I have the ruling before me. It is in the case of Southern Realty Investment Company v. Nancy Walker, 211 U. S. 603, 29 Sup. Ct. 211, 53 L. Ed. 346. Mr. Justice Harlan, in delivering the opinion of the court, said:

"There was evidence leading to the conclusion that the Southern Realty Investment Company was brought into existence as a corporation only that its name might be used in having controversies that were really between citizens of Georgia determined in the federal rather than in the state court. It did not have, nor was it expected to have, as a corporation, any will of its own or any real interest in the property that stood or was placed in its name. It was completely dominated by the two Georgia attorneys who secured its incorporation under the laws of South Dakota through the agency of a South Dakota lawyer, who in a letter to one of the Georgia attorneys claimed that his office had within three years secured nine hundred and eighty-five (985) charters under the laws of that state for nonresidents, and part of whose business was to 'furnish' South Dakota incorporators, when necessary. In short, the plaintiff company was and is merely the agent of the Georgia attorneys who brought it into existence as a corporation that individual citizens of Georgia, having controversies with other individual citizens of that state, might, in their discretion, have the use of its corporate name in order to create cases apparently within the jurisdiction of the federal court. It had, it is true, a president and a board of directors—all of whom were citizens of Georgia—two of the five directors being the Georgia attorneys, and one being the female stenographer

of such attorneys, but the president and the majority of the directors were the holders each of only one share of donated stock and recognized it to be their duty to represent the Georgia attorneys and to obey, as they did obey, their will implicitly. The company in respect of all its business was the agent of those attorneys to do their bidding. Its president testified that he did not know for what purpose the company was really organized, or that it had ever done any business except 'as to the bringing of these suits,' or that it had any money. Its place of business in Georgia was in the office of the Georgia attorneys. Its pretended place of business in South Dakota was in what is called a domiciliary office, maintained by the attorneys in that state who procured its charter. In the latter office there could have been found, no doubt, a desk and a chair or two, but no business. The company's president never knew of its doing any business in South Dakota. As a corporation the Southern Realty Investment Company must be deemed a mere sham. It has, in fact, no property or money really its own, and it was not intended by those who organized it that it should become the real owner of any property of its own in South Dakota or elsewhere. It is, as already stated, simply a corporation whose name may be used by individuals when they desire for their personal benefit to create a case technically cognizable in the federal court. Those individuals, using the name of a corporation for the benefit of themselves and their clients, citizens of Georgia, seem to be the real parties in interest in every transaction carried on in the name of the corporation."

Now that is the decision of the highest appellate court in our country. It is final. This corporation is therefore conclusively held to be a mere sham. These gentlemen, members of the bar of this court, concede that they control the corporation. Mr. Cutts in his testimony stated that he never concealed that they controlled it and dominated it. But it is said that they had good faith in its organization, and that this is evidenced by the fact that eminent counsel, like Mr. King, agreed with them in their view of the law, and that there were decisions by the federal courts, particularly one in the 174th Federal Reporter, I believe, sustaining that view, and that Mr. Justice Brewer dissented from the conclusions of the Supreme Court, just quoted.

If that were all, out of consideration for the infirmities of human judgment, it might be said that their bad faith was not so conclusively shown that the court would be justified in disbarring them because of the existence of this South Dakota corporation, and because of their participation in its organization for the purpose of bringing suits against the people of Georgia who otherwise could not be sued except in the local courts. But that is not all. The cases which are involved in this proceeding, the individual cases of Gelders and of Hall, and of Nancy Walker, were dismissed because this court, and the other court, of which this court is merely a part—in other words, the courts of the federal judiciary system having jurisdiction—had held that the jurisdiction obtained in this manner was a legal fraud upon the court, and a fraud upon the parties. But these gentlemen, members of the bar of this court, did not stop there. They proceeded in the name of the same corporation to sue these defendants in the state courts. A wrong is done just as completely by the use of a sham corporation in suits in the state court as if the suit had been maintained and continued in the United States court. The effect upon the people—to protect whom against the improper conduct of attorneys is the duty of this court—is precisely the same. They are harassed in their peace and quietude. They are threatened with all the anxieties and expenses

of litigation. They are involved in that misery of the "law's delay" which Shakespeare catalogues as one of the "wrongs which patient merit of the unworthy takes." That wrong is done by officers of this court in the exercise of the powers of a sham corporation, which they in effect concede, and which the Supreme Court of the United States has held to be a sham corporation. That is brought to the attention of the court in this proceeding, not only by the evidence, but by the statements of the respondents and by the statements of their counsel in judicio. Thus it comes to the attention of this court that these members of the bar of this court are proceeding to harass people of this state by the utilization of the powers of a sham corporation. While this is done in the courts of the state, it is disrespectful and disobedient to the ruling of this court, and of the Supreme Court, both of which have jurisdiction of the persons of the respondents and their misconduct with regard to judgments to which they were and are parties. As attorneys and parties in this court, they cannot be allowed to disregard its solemn and final determination. They cannot be allowed to persist in their error when that has been judicially pointed out. However sincere may have been their original view of this corporation, that sincerity cannot protect them now.

It is with much regret for these reasons the court must decree that they be disbarred from this court, unless within 60 days they effectually dissolve that corporation, and dismiss all suits brought in its name.

It is just to say that the respondents, through their counsel, at once agreed to dissolve the corporation, and to strike its name from their suits.